Filed 3/27/26  P. v. Watkins CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDREW WATKINS,<br><br>        Defendant and Appellant. | A173093<br><br>(Alameda County Super. Ct. No. 24MH0021221) |

Defendant was found incompetent to stand trial and committed to the Department of State Hospitals (the Department) (Pen. Code[1], § 1368).  At issue in this appeal is an involuntary medication order under section 1370, subdivision (a)(2)(B)(i)(I) and (II).  Defendant argues that the court's order is not supported by substantial evidence.  We affirm.

## BACKGROUND

The People filed a felony complaint against defendant alleging multiple counts of assault.  The trial court thereafter adjudicated defendant incompetent pursuant to section 1368 and ordered him committed.  The court also issued an initial

_____

[1] All further statutory references are to the Penal Code.

involuntary medication order, finding that defendant lacked the capacity to make decisions regarding antipsychotic medication, and that his mental disorder, if not treated, would result in serious harm to his physical or mental health. Defendant was admitted to Atascadero State Hospital (Atascadero) in May 2024.

In February 2025, the Department moved to renew the court's involuntary medication order, and the court held hearings in March 2025 on this motion. Dr. Sonya Jackson, defendant's treating psychiatrist at Atascadero, was the only witness.[2]

Dr. Jackson testified that she saw defendant weekly, she had reviewed his records, and she had spoken with members of his treatment team. Dr. Jackson diagnosed defendant with schizophrenia. His symptoms included hearing voices and poverty of speech and thought, with the latter meaning that he has "difficulty elaborating" when expressing himself and often nods rather than providing verbal responses. Schizophrenia requires treatment with antipsychotic medication, and there are no other viable treatment options.

When Dr. Jackson asked defendant which medications helped him, he answered, "I don't know." When Dr. Jackson asked what led to defendant's most recent arrest, defendant said he "was having an episode" that included hearing voices. At Atascadero, defendant acknowledged that he heard voices and

---

[2] There is a dispute regarding whether the court considered the report supporting the 2024 involuntary medication order in the present proceeding. We do not describe this earlier report because we find Dr. Jackson's testimony was sufficient to support the court's current involuntary medication order.

2

the voices were very distressing. Around January 28, 2025, defendant told Dr. Jackson that the voices instructed him to "get mad." Dr. Jackson also reported that, earlier in the week of the hearing, defendant had punched himself in the head because of the voices. Defendant sometimes reported hearing voices and other times denied the voices, but staff continued to see him talking to himself or yelling in his room, which Dr. Jackson stated was objective evidence of the voices persisting. Dr. Jackson agreed that defendant's symptoms were "[n]ot exactly" the same every day, "but the voices [we]re very prominent."

Dr. Jackson testified that defendant was unable to express what he believed caused the voices. He did not believe medication alleviated the voices and "was not able to acknowledge" his improvement while on medication, although he said that the medication, including PRN medications, which are "as-needed" medications, helped with his stress and kept him calm. Dr. Jackson testified that, when defendant arrived at Atascadero, he was "very paranoid," heard "much more extreme" voices, and "was unable to sit down" or have a discussion with or listen to staff. He physically went after some staff at admission (although there was no documentation of injury), and he had to be put in seclusion and full-bed restraints.

Defendant had been taking medication pursuant to a court order since July 2024 when he was transferred to Dr. Jackson's unit. Dr. Jackson testified that defendant had PRN prescriptions for chlorpromazine and olanzapine for when he experienced

severe symptoms or refused his regularly scheduled medication. He also sometimes coped with his symptoms by pacing.

Although defendant told Dr. Jackson the day before the hearing that he would take medication, defendant had a history of refusing medication, including when he arrived at Atascadero and when Dr. Jackson treated him in 2018. Dr. Jackson testified that defendant was unable to engage in an intelligent conversation with her about the risks and benefits of treatment. In her professional opinion, defendant lacked capacity to make decisions regarding antipsychotic medication.

Dr. Jackson described the progressive loss of functioning that occurs when someone with schizophrenia does not receive treatment with medication. Without treatment, the overall functioning of a patient with schizophrenia will gradually deteriorate. In contrast, with consistent medication, a patient can maintain their level of functioning. If a patient intermittently takes medication, the medication often does not work as well once restarted, which can necessitate taking a higher dose or multiple medications. Stopping and starting medication also leads to a decrease in overall functioning, and the patient may never return to the prior level of functioning.

On March 28, 2025, the court found that defendant "lack[ed] the capacity to make decisions regarding antipsychotic medication and if [his] mental disorder is not treated, serious harm to his physical or mental health is the probable result, pursuant to [section] 1370(a)(2)(B)(i)(I)." The court also found

4

that defendant was a danger to others pursuant to section 1370(a)(2)(B)(i)(II).  Defendant timely appealed.

## DISCUSSION

"[A]n individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.' " (*Sell v. United States* (2003) 539 U.S. 166, 178.)  This interest is protected under California's right to privacy, which "clearly extends to the right to refuse antipsychotic drugs." (*In re Qawi* (2004) 32 Cal.4th 1, 14.)

Our Legislature has amended section 1370 to meet the constitutional standards related to involuntary medication orders for defendants deemed incompetent to stand trial and committed to the Department.  (*People v. Lameed* (2016) 247 Cal.App.4th 381, 396; § 1370, subd. (a)(2).)  Section 1370 permits involuntary medication in three circumstances (§ 1370, subd. (a)(2)(B)(i)(I-III)), and here the court found that two of the three circumstances existed.  The question before us is whether the record contains substantial evidence from which the court could have found it highly probable that the requisite facts were true (the clear and convincing evidence standard of proof).  (*People v. Garcia* (2024) 99 Cal.App.5th 1048, 1054.)  For the reasons set forth *post*, we conclude that Dr. Jackson's testimony was sufficient to support the court's order.

To order involuntary administration of antipsychotic medication under section 1370, subdivision (a)(2)(B)(i)(I), a court must find the following three facts true:  "[1] the defendant lacks capacity to make decisions regarding antipsychotic medication,

5

[2] the defendant's mental disorder requires medical treatment with antipsychotic medication, and [3] if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the defendant will result." Defendant disputes the court's findings as to the first and third condition.[3]

First, the record supports the court's conclusion that defendant lacked capacity to make decisions regarding antipsychotic medication. Defendant contends the record shows he understood that he had a mental illness and the effects that antipsychotic medication had on this illness, but we disagree. Defendant was able to acknowledge that he had an episode when arrested and that he heard "very distressing" voices. Nonetheless, Dr. Jackson testified that defendant had been unable to articulate what he thought caused the voices. Defendant believed that medication, including PRN medications, helped his stress and kept him calm; however, he did not believe that medication helped the voices. Dr. Jackson testified that defendant had not been able to engage in an intelligent conversation regarding the risks and benefits of treatment. She also testified that antipsychotic mediation had "absolutely" improved defendant's condition since his admission, but he was nonetheless unable to acknowledge that medication played a role in this improvement. This evidence supports the conclusion that

---

[3] Regarding the second condition, defendant was undisputedly diagnosed with schizophrenia, and Dr. Jackson testified that the only treatment for schizophrenia is antipsychotic medicine.

6

defendant was unable to understand that his mental illness caused the voices or recognize that antipsychotic medication improved his symptoms, which in turn supports Dr. Jackson's opinion that defendant did not have the capacity to make decisions regarding the administration of antipsychotic medications.

On appeal, defendant asserts that the People did not establish that he lacked understanding that medication had improved his condition because there was no clear and convincing evidence that antipsychotic drugs had in fact alleviated his symptoms as he still heard "very prominent" voices. We cannot agree with defendant. The record shows that, when defendant arrived at Atascadero, he was paranoid and heard voices to an extreme degree. Defendant would not listen to staff or take medication, he physically went after staff, and his response to the voices was so severe that he had to be put in seclusion and physically restrained. Since defendant's move to Dr. Jackson's unit in July 2024, he had been taking antipsychotic medication, and he had not had any incidents requiring seclusion or restraints. Even though defendant still heard voices, the evidence thus supports Dr. Jackson's opinion that she "absolutely" saw an appreciable improvement in defendant after he began taking medication.

Next, the record was sufficient for the court to find, by clear and convincing evidence, that if "defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the defendant

7

will result." (§ 1370, subd. (a)(2)(B)(i)(I).) "Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects to [his or her] physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and his or her condition is substantially deteriorating. The fact that a defendant has a diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant." (*Ibid.*)

Here there was more than just a diagnosed mental disorder. Dr. Jackson testified that, without medication, a schizophrenic's overall functioning will deteriorate, and when defendant was not taking antipsychotic medication upon his admission to the hospital, he had responded to hearing the internal voices to such an extreme degree that the Department had to restrain him and put him in seclusion. Presently as a result of his schizophrenia, defendant was suffering from poverty of speech and thought, hearing voices that he found "very distressing," and he had recently punched himself in the head because of the voices. This testimony provides clear and convincing evidence that defendant "is presently suffering

8

adverse effects to [his] physical or mental health." (§ 1370, subd. (a)(2)(B)(i)(I).)[4]

## DISPOSITION

The order is affirmed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.

*People v. Watkins* (A173093)

---

[4] Defendant also argues there was insufficient evidence to support the court's finding that he was a danger to others under section 1370, subdivision (a)(2)(B)(i)(II). Given our determination that substantial evidence supports the court's finding under section 1370, subdivision (a)(2)(B)(i)(I), we need not address this argument.

9